Dr. T. J. Ramírez Cuerda, Plaintiff and Appellee, *v.* Angel María Yumet Méndez, Defendant and Appellant.

No. 4798. Argued February 6, 1930.—Decided July 7, 1931.

*A. García Ducós* for appellant. *J. Alemañy Sosa* for appellee.

Mr. Justice Aldrey delivered the opinion of the Court.

Dr. T. J. Ramírez Cuerda brought an action against Angel María Yumet Méndez to recover from him the sum of $5,000 as the reasonable value of medical services rendered to him. The defendant took the present appeal from an adverse judgment for $1,500, with legal interest thereon from the commencement of the action and without special imposition of costs.

The essential ground of the appeal is that the sum of $1,500 granted by the lower court as the reasonable value of the services rendered by the plaintiff is excessive and should be reduced to $350, which the appellant considers fair and which he offered to pay in his answer to the complaint.

It appears from the evidence that Angel María Yumet Méndez, who resides in Aguadilla, was taken ill on March 4, 1927, suffering from quinsy or suppurative tonsillitis, according to his physician Dr. Igartúa, and improved shortly thereafter to such an extent that for three or four days he was able to walk about outdoors. However, afterwards he fell ill again and his physician discovered then an edematous condition at the base of the lungs, with a great amount of albumin, blood, and cylinders in the urine, and diagnosed the case as one of nephritis secondary to the suppurative tonsillitis. On March 22 there was a consultation with Dr. Biamón of San Juan, who concurred in the diagnosis and the treatment of the physician in charge, Dr. Igartúa. The patient, however, got worse and on March 27, taking advantage of the presence in Aguadilla of Dr. Biamón and Dr. González Martínez, of San Juan, and with the attendance of Dr. Torregrosa, another consultation took place, all of the physicians agreeing on the diagnosis of acute nephritis secondary to the tonsillitis. On the 30th of March, the plaintiff, who practices in Mayagüez, where he has a clinic, was called for a consultation with his colleagues, Igartúa, Zamora, and Cardona, and after a report on the case and an examination of the patient Dr. Ramírez Cuerda diagnosed

the case as one of diphtheria, the other three physicians on consultation dissenting. It was then decided, for the purpose of confirmation, to send to a laboratory in San Juan the exudate from the throat of the patient. This was done and in the afternoon of the following day the laboratory in question informed by wire that it was a positive case of diphtheria. In view of the above report, an injection of antidiphtheric serum was given to the patient. Two days afterwards Dr. Ramírez Cuerda journeyed again to Aguadilla at the request of the Yumet family. He found that the patient had improved, and more serum mixed with glucose . was injected into him. On April 5, Dr. Ramírez Cuerda was called again because the condition of the patient became worse and he went to Aguadilla and visited the patient together with Dr. Igartúa. He noticed a diminution in the urine and uremic symptoms caused by the toxins from the antidiphtheric injection. For that reason he suggested the bleeding of the patient, Dr. Igartúa concurring; but as the other two physicians, Dr. Cardona and Dr. Zamora, disagreed, the patient was not bled. Dr. Susoni of Arecibo, was then called; he came and agreed on the phlebotomy, which was not performed immediately owing to the serious condition of the patient and it was necessary to wait several hours, until eleven o'clock that night, when the patient had somewhat reacted favorably, and at dawn the patient began to improve. Nine days afterwards the plaintiff went again to Aguadilla at the request of the family and, in agreement with Dr. Igartúa, he declared the patient to be convalescent. He did not call again. During those calls Dr. Ramírez Cuerda was obliged to remain for many hours in Aguadilla. According to Dr. Igartúa, the patient never suffered from diphtheria and the injections to combat it made him worse. It was admitted that Dr. Zamora and Dr. Cardona would similarly testify.

Dr. Ramírez Cuerda stated as a witness, in the presence of several physicians who testified later, the nature of the

services rendered by him to Mr. Yumet, and based on his testimony Dr. Montalvo Guenard and Dr. Frank O. Rivera stated that in their judgment such services were worth $10,000. Dr. Blanes and Dr. Casalduc appraised them at $5,000. Dr. Igartúa, Dr. Biamón, and Dr. Susoni, produced by the defendant, failed to testify as to the reasonable value of the services rendered by the plaintiff.

Section 1486 of our Civil Code grants to professional men, when there is no express contract as to compensation, the right to sue for and recover the reasonable value of the services rendered. In determining their values there may be taken into consideration, besides the services in themselves, the nature and difficulty of the case, the professional standing of the plaintiff, his experience as a physician, and even the financial condition of the defendant, although as to this last point there is great conflict in the authorities. 48 C. J. 1167. Regarding the elements to be considered, we transcribe the following from Wharton & Stiles' Medical Jurisprudence, vol. 3, p. 472:

"A physician rendering medical services to another, without a specific agreement as to compensation, must recover, if at all, upon a quantum meruit, the value to be proved being the ordinary and reasonable price for services of that nature. And this he is entitled to, where no want of actual skill is specifically shown though he fell into mistake in his treatment, and though he did not succeed in accomplishing that for which he was employed. A physician in such case, however, can only recover the fair value of the services actually rendered; and the value of a physician's services cannot be measured as matter of law by his actual average daily receipts; the jury in such cases must take all of the various elements into consideration, and draw its own conclusion as to the amount by comparison. And the reasonableness of the charge of a physician for his services cannot be determined by comparison with other charges made by him in similar cases.

"* * * * * * *

"The measure of compensation of physicians and surgeons is controlled to some extent by their standing and ability in the profession, and the seriousness of the case, and the services rendered and

their general responsibility and success.'' Lange v. Kearney, 21 N.Y. S.R. 262, 4 N.Y. Supp. 14.

In view of the foregoing and the uncontroverted statements of the plaintiff as to the reasonable value of the services claimed by him, we are of the opinion that the sum granted by the trial court in the instant case was not excessive.

The appellant has raised other secondary questions in his brief. The motion to strike out certain particulars from the complaint and the demurrer interposed thereto for insufficiency were properly determined. Assignments 4, 5, and 6 relating to the measure of success obtained by the plaintiff are without merit, since such success is an element to be taken into account in fixing the value of the medical services. In regard to the seventh and the eighth assignments predicated on the admission of evidence respecting the financial status of the defendant, even if such evidence were inadmissible, which we do not hold, the admission complained of was not prejudicial to the appellant, as notwithstanding some of the physicians produced by him had testified to the effect that the services rendered were worth $5,000 and others estimated them to be worth much more, the court granted only the sum of $1,500. The tenth assignment is not tenable either, because Dr. Francisco J. Casalduc was competent to testify as to the value of the services rendered by the plaintiff, even though he did not reside in Aguadilla. Similarly as to the eleventh assignment, since the plaintiff having won his case no costs should be imposed on him.

The judgment appealed from must be affirmed.